IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

PAUL LANAKILA CAMPOS,      )   CIV. NO. 07-00454 HG-KSC
                         )
          Plaintiff,   )
                         )
    vs.               )
                         )
LINDA LINGLE, CLAYTON FRANK,  )   FINDINGS AND RECOMMENDATION
KAY BOWMAN, ALAN NOUCHI,    )   TO GRANT DEFENDANTS' MOTION TO
WALTER KANAMU, JENIFER LNU,  )   SET ASIDE DEFAULT; FINDINGS AND
PEDRO LNU, BRIAN ABAC, TODD  )   RECOMMENDATION TO DENY
FRIAS, SHELLY LNU, UNKNOWN   )   PLAINTIFF'S MOTION FOR
DAVIS, BRIAN MANSANO, DIANE  )   RECONSIDERATION; AND ORDER
CUNNINGHAM, MOKE RYAN, GAIL  )   DENYING PLAINTIFF'S MOTIONS FOR
M., CHARLEY THOMAS, UNKNOWN  )   DEFAULT JUDGMENT
TAYLOR, JOHN DOES 1-10, JANE  )
DOES 1-10, A.C.O. SGT.       )
CULLEN, A.C.O. D. JOSIAH,    )
ACO DACUYCUY, FRANK LOPEZ,   )
JUNE TAVARES,               )
                         )
          Defendants.  )
_____

**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO SET
ASIDE DEFAULT; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S
MOTION FOR RECONSIDERATION; AND ORDER DENYING PLAINTIFF'S
MOTIONS FOR DEFAULT JUDGMENT**

On February 4, 2008, Plaintiff filed a document titled,

"Motion in Limine," which the court has construed as a Motion for

Reconsideration of the October 25, 2007, Order Dismissing Amended

Complaint in Part Pursuant to 28 U.S.C. § 1915 ("October 25

Order"). (*See* Doc. No. 20.)  The Motion for Reconsideration has

been referred to this court.  (Doc. No. 93.)  Plaintiff alleges

that he is being forced to choose between receiving medication or

attending the law library and seeks reconsideration of his

dismissed claims in Count III, alleging denial of access to the

courts on this basis.

On February 6, 2008, Plaintiff moved for entry of default and default judgment in this action.  (Doc. No. 89.)  On February 8, 2008, seeing that no Answer had been filed, the Clerk entered default.  (Doc. No. 90.)  On that same day, certain Defendants[1] filed an Answer to the Complaint.

On February 12, 2008, the Court set an expedited hearing date on Plaintiff's Motions, to be held February 28, 2008, and ordered Defendants to respond.  The Court notified the parties to be prepared to also discuss Plaintiff's allegations that he is unable to receive adequate, timely photocopies from the prison, and is therefore forced to rely on the Clerk of Court to provide photocopies of his documents for him.

On February 12, 2008, Defendants moved to set aside entry of default.  (Doc. No. 96.)  Defendants' Motion was referred to this court, and also set for hearing on February 28, 2008.  (Doc. Nos. 97 & 102.)

On February 19, 2008, Defendants filed a Memorandum in Opposition to Plaintiff's Motions for Reconsideration and Default Judgment.  (Doc. No. 105.)  On this same date, Plaintiff filed a

---

[1] Defendants's attorney, Deputy Attorney General John M. Cregor, Jr., answered on behalf of Defendants Governor Linda Lingle, Clayton A. Frank, Frank J. Lopez, Kay A. Bauman, M.D., June Tavares, Alan A. Nouchi, Walter K. Kanamu, Jr., Jennifer Lopez, R.N., Brandon Pedro, Brain Abac, Allen Davis, Brian Mansano, Lt. Cory Ryan, Sgt. Gail Mirkovitch, Lt. Charles Thomas, Capt. Deborah Taylor, and Dukie Josiah.

second "Motion for Default; Default Judgment."  (Doc. No. 106.)
Plaintiff moved for entry of default and default judgment against
Defendants Dacuycuy, Frias, and Cullen, whose names were not on
the Answer filed on February 8, 2008.  The Clerk entered default
against these Defendants on February 22, 2008.  (Doc. No. 111.)

On February 22, 2008, Defendants moved for leave to
file an Amended Answer to the First Amended Complaint, so that
Defendants Dacuycuy and Cullen could be included.[2]  (Doc. No.
110.)  On February 27, 2008, the Court granted Defendants' Motion
for Leave to File First Amended Answer.  (Doc. No. 112.)

On February 26, 2008, Plaintiff filed a Reply to
Defendants' Opposition to his Motion for Reconsideration.  On
February 27, 2008, Plaintiff filed a Declaration, and two
separate documents titled "Plaintiffs' [sic] Supplemental Rule
26(a) Document Production."[3]

A hearing on the parties' various remaining Motions
was held on February 28, 2008.  After carefully considering the
record in this case, the parties' complete briefs, and the

---

[2] Defendant Todd Frias, who is no longer employed by the
DPS, has not filed an answer.  Defendants Shelly Fernandez and
Diane Cunningham have never been served with the Original or
First Amended Complaint.

[3] Plaintiff also filed a documents titled "Second Motion in
Limine and/or Reconsideration," and "Motion for the Submission of
'Definitions to the Court."  These documents have not been
considered for the purposes of the present motions, as neither
document has any bearing on the issues now before the court and
addressed in this Order and Findings and Recommendation.

parties oral arguments, the court **FINDS AND RECOMMENDS** that
Defendants' Motion to Set Aside Default be **GRANTED AS TO ALL
DEFENDANTS NAMED ON THE AMENDED ANSWER**, and that Plaintiff's
Motion for Reconsideration be **DENIED**.  The court **DENIES**
Plaintiff's Motion for Entry of Default Judgment.

The Court further finds that Plaintiff is able to
receive adequate photocopies of his documents if he complies with
the prison's simple rules for requesting such photocopies.
Accordingly, the court **VACATES** the December 27, 2007 Order, Doc.
No. 72, allowing Plaintiff to receive photocopies from the court.

## I. BACKGROUND

The original Complaint in this action was filed on
August 22, 2007.  Plaintiff's *in forma pauperis* (IFP) application
was granted on August 31, 2007.  (Doc. No. 4.)

On September 13, 2007, the court dismissed the
Complaint in part, pursuant to 28 U.S.C. § 1915.  (Doc. No. 6,
"Order Dismissing Complaint in Part Pursuant to 28 U.S.C. § 1915"
("September 13 Order").)[4]  The court held that Plaintiff: (1)
proceeding pro se, could not maintain a class action suit; (2)
sought only injunctive relief; (3) failed to state a claim
against any Defendant in his or her individual capacity; (4)
failed to state a claim for a delay in medical care as alleged in

---

[4] Plaintiff's claims were thoroughly set forth in the
September 13 Order and need not be recounted again for the
purposes of this Findings and Recommendation.

Count I; (5) failed to state a claim for overcrowding as alleged in Count II; (6) failed to state a claim for the denial of access to the court, insofar as he vaguely alleged his access to the law library was limited by the times his medication was delivered to his cell, as alleged in Count III; and (7) partially failed to state a claim for overcrowding in Count IV, insofar as the claim alleged a denial of activities to which Plaintiff is not entitled.

The court found, however, that Count III, alleging that Plaintiff's confidential legal communications with his attorney and/or the court were being illegally monitored or interfered with by prison officials, and Count IV, alleging that Plaintiff was assaulted by another inmate due to overcrowding, stated a claim and were allowed to proceed without amendment. Plaintiff was given thirty days to amend his Complaint to clarify his dismissed claims. Plaintiff was notified that failure to adequately do so would result in automatic dismissal of those claims and defendants dismissed by the order.

On October 9, 2007, Plaintiff filed a First Amended Complaint ("FAC"), which was substantially identical to the original Complaint, except for one newly added claim. (Doc. No. 14.) On October 11, 2007, Plaintiff also filed a "Supplemental First Amended Complaint." (Doc. No. 18.)

On October 25, 2007, the Court dismissed the first

Amended Complaint and its supplement in part, pursuant to 28 U.S.C. § 1915. (Doc. No. 20, ("October 25 Order").) Because Plaintiff failed to adequately cure the deficiencies in his claims as set forth in the September 13 Order, all claims and most Defendants in their individual capacities that were dismissed remained dismissed with prejudice.[5]

On November 13, 2007, Waiver of Service receipts were filed on behalf of Department of Public Safety ("DPS") employees Mansano, Davis, Josiah, Taylor, Pedro, Nouchi, Abac, Thomas, Frank, Frank Lopez, Mirkovich, Jennifer Lopez, Tavares, Bauman, Ryan, and Kanamu, indicating that they were sent to them between **October 10 and 19, 2007.** (Doc. Nos. 38-54.) These Defendants also filed their Waivers of Service of Summons on the same date. (Docs. No. 21-37.)

On November 19, 2007, Governor Linda Lingle filed a "Waiver of Service of Summons." (Doc. No. 55.) Governor Lingle filed her Waiver of Service receipt on December 5, 2007, indicating that it was sent to her on **October 10, 2007.** (Doc.

---

[5] The October 25 Order held that Plaintiff again failed to state a claim against Defendants Lingle, Frank, Bauman, Nouchi, Kanamu, "Jenifer," Cunningham, Ryan, Murkovitch, Thomas, and Taylor in their individual capacities. October 25 Order at 9. Defendants Frias, Pedro, Davis, Mansano, Abac, Dacuycuy, and Josiah remained in their official and individual capacities. The court later amended the October 25 Order to recognize that Plaintiff had also named Frank Lopez and June Tavares, and to dismiss these Defendants in their individual capacities. (Doc. No. 68, entered Dec. 18, 2007, "Order Amending Order Dismissing Amended Complaint in Part Pursuant to 28 U.S.C. § 1915.")

No. 59.)

On December 5, 2007, Todd Frias, who is no longer a DPS
employee, filed a Waiver of Service of Summons and a Waiver of
Service receipt, dated as sent on November 7, 2007.  (Doc. No.
58.)

On January 3, 2008, Defendants Dacuycuy and Cullen
filed their Waivers of Service of Summons forms, dated December
14, and 20, 2007, respectively.  (Doc. Nos. 74-75.)  These
waivers do not indicate the date the requests for waiver were
sent, as they should, and there is no court record of Waiver of
Service receipts, indicating the date the Waiver of Service of
Summons forms were sent to them by the U.S. Marshals Service.

On December 6, 2007, Mr. Cregor entered his special
appearance on behalf of the State Defendants, so that he could
respond to the court's request for information concerning
Plaintiff's allegations that he is unable to receive adequate
copies from the prison.  (*See* Doc. Nos. 56, "Order," and 61.)

## II. <u>DISCUSSION</u>

### A.   <u>Plaintiff's Motion for Reconsideration</u>

Plaintiff seeks reconsideration of the October 25
Order's dismissal of Count III in part, as it relates to
Plaintiff's claims that he was denied access to the court.  (*See*
October 25 Order 11-12.)  Plaintiff alleges that he was forced to
choose between receiving medication or attending the law library

7

and seeks reconsideration of his dismissed claim alleging denial of access to the courts on this basis.  Plaintiff supplies an August 27, 2007, letter from DPS officials in support of his Motion for Reconsideration.  (*See* Mot. for Recon. Ex. A.)  The letter states that, because Plaintiff chose to schedule his law library appointment at the same time as medicines are delivered to his Quad, he chose to forego receiving his medicines.

In his Motion, Plaintiff states that, "as common sense would dictate," he has no control over when he is assigned to attend the law library, and states that Defendants assigned him law library sessions during the time that medicines are delivered to his Quad to deprive him of his right of access to the court. (Doc. No. 84, Mot. Recon. at 2.)  Plaintiff alleges that Defendants refused to administer his medicines to him at a different time.

Defendants state that there are two law library sessions that inmates may attend: 8:00 a.m. to 11:00 a.m. and 12:00 p.m. to 3:00 p.m.  Inmates may request to attend either session.  These time requests are usually accommodated. Medications are distributed to the various Modules in the morning between 5:45 a.m. and 9:00 a.m.  Inmates in Plaintiff's Module D usually receive their medications at the latter end of the time period.  Defendants stated at the hearing that, after the one incident that Plaintiff complains of, which occurred more than

six months ago, Plaintiff has always been assigned the afternoon law library sessions and there has been no conflict between his receiving medication or attending the law library.

Plaintiff also admitted that, apparently since before he filed the original Complaint, Defendants have addressed the problem and now consistently schedule him for the afternoon law library sessions. Plaintiff concurred that he has had no further conflicts between law library scheduling and receiving his medicines.

The court reviews Plaintiff's Motion for Reconsideration under Rule LR60.1 of the Local Rules for the United States District Court for the District of Hawaii, which applies to motions for reconsideration of interlocutory orders.[6]

---

[6] Local Rule LR60.1 states:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds;
>
> (a) Discovery of new material facts not previously available;
>
> (b) Intervening change in law;
>
> (c) Manifest error of law or fact.
>
> Motions asserted under Subsection (c) of this rule *must be filed not more than ten (10) business days after the court's written order is filed*.

(emphasis added).

"Local Rule 60.1 explicitly mandates that reconsideration only be granted upon discovery of new material facts not previously available, the occurrence on an intervening change in law, or proof of manifest error of law or fact." *Sierra Club, Hawaii Chapter v. City and County of Honolulu*, 486 F. Supp. 2d 1185, 1188 (D. Haw. 2003.)

A "motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate reasons that the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996); *Na Mamo O 'Aha 'Ino v. Galiher*, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999) (citation omitted). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

Plaintiff does not argue that there has been an intervening change in the governing law here. Nor does he present new evidence not previously available, as his August 27, 2007, letter from the DPS was written and received *before* both the September 13 Order or the October 25 Order was entered

10

dismissing this claim from Count III, and could have been brought to the court's attention at any time since August 2007.  Thus, Plaintiff apparently seeks reconsideration under LR60.1(c), to correct a manifest error in fact.  Plaintiff's motion is therefore untimely.  *See* LR60.1.

The September 13 Order informed Plaintiff that he needed to clarify his right of access to the court claims in Count III, insofar as it was uncertain whether he alleged he was being forced to choose between receiving his prescription medicines or attending the law library, or if the prison was simply refusing to administer his medicines to him <u>while he was in the law library</u>.  *See* September 13 Order at 3, 15, & 18-19.

Plaintiff was also informed that he failed to state a claim for denial of access to the court because he failed to identify any actual or proposed litigation that was frustrated or hindered in any manner by his supposed restricted law library access.  In short, Plaintiff failed to allege any actual injury to his right of access to the court, a prerequisite to maintaining a right of access to the court claim.  *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).  An allegation of an actual injury is a jurisdictional requirement flowing from standing doctrine and may not be waived.  *Id.* at 349; *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999).  Plaintiff was given thirty days to clarify or otherwise amend this claim to state a claim.

September 13 Order at 19-20.

Plaintiff failed to clarify or explain this claim when he filed his FAC and supplement on October 9 and 11, 2007, respectively. *See* FAC at 13. In fact, Count III of the FAC is identical to the original Complaint. Plaintiff added no new facts to explain or clarify his right of access claims in Count III.

Moreover, on December 17, 2007, Plaintiff filed a Motion to Amend or Alter the October 25 Order, requesting the court to take note that he had, in fact, named Defendants Frank Lopez and June Tavares. (Doc. No. 66.) This Motion made no mention of Plaintiff's dismissed claims in Count III, or any attempt to correct the court's apparent misunderstanding of his claims in Count III in the September 13 or October 25 Orders.

Thus, despite notification of the inherent problems concerning his claims in Count III on September 13, and again on October 25, 2007, Plaintiff waited to file his Motion for Reconsideration of the court's decision to dismiss this claim until **February 4, 2008**, almost five months after he was first notified of the claim's apparent deficiency, rendering this Motion untimely under LR60.1(c).

Even accepting Plaintiff's allegations as true: that he has no control over when he is assigned to law library sessions, that Defendants purposely assigned him a morning law library

session when medicines were administered in his Quad, and that Defendants then refused to administer his medicines at an alternative time – Plaintiff still fails to convince this court that the partial dismissal of his claims in Count III should be reconsidered.

First, Plaintiff fails to allege an actual injury to any pending or proposed litigation.  An "actual injury" pertains to "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'"  *Lewis*, 518 U.S. at 348 (citation omitted); *Madrid*, 190 F.3d at 996.  Plaintiff points to no dates that he has missed in any case, no court-ordered sanctions for his failure to abide by any dates or court orders, and no proposed or past litigation that was frustrated or hindered in any manner by his inability to attend law library sessions.

Plaintiff simply asserts that, because he allegedly had to choose between attending the law library once in August 2007, and receiving his medicine, his right of access to the court was violated.  The right of access to the court is not, however, simply a right to attend a law library.  Law libraries and legal assistance programs are only the means of ensuring access to the courts.  *Lewis*, 518 U.S. at 351.  Inmates do not have "an abstract, freestanding right to a law library or legal assistance, [therefore] an inmate cannot establish relevant

13

actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.*  Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. *Id.*  Plaintiff fails to show any actual injury to his right of access to the courts, and as he was twice informed, this is fatal to his right of access to the court claims in Count III.

Second, Plaintiff admits that he no longer must choose between receiving his medicine and attending the law library, and has not had to do so since August.  Despite his claim that he has no control over when he may attend the law library, once he informed prison officials of the conflict, he has been assigned to the afternoon sessions only, which pose no conflict with medicine distribution.  Plaintiff submits a recent Memo from Acting Warden Nouchi directing prison officials to escort inmates to their scheduled programs, including law library, after the inmates have received their medication at their "standard distribution time."  Plaintiff suggests that this Memo supports his contention that prison officials are hindering inmates access to the law library, because he asserts that there is no "standard time" that medicines are delivered to the inmates.  This is simply smoke without fire.  Plaintiff admits that medicines are delivered in the mornings, and admits that he has not missed receiving his medicines since he has been scheduled for afternoon

law library sessions.  Rather than support his argument, this memo actually implies that, even if Plaintiff were inadvertently assigned to a morning session, he is now able to receive medicine and then be taken to the law library, although he may not receive the full session if he has to wait for the medicine.

Third, the court notes that Plaintiff is seeking only injunctive relief in this action.  As he admits that he has received that relief, insofar as his dismissed claims in Count III are concerned, this claim is moot.

The court **FINDS** that Plaintiff's Motion for Reconsideration is both untimely and futile insofar as Plaintiff's newly presented facts do not give evidence of any actual injury to his access to the court and he has attained the relief he sought.  The court therefore **RECOMMENDS** that Plaintiff's Motion for Reconsideration be **DENIED**.

B.   **Defendants' Motion to Set Aside Default; Plaintiff's Motions for Default Judgment**

Defendants move the court to set aside the entry of default against them.  Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), states that, "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Defendants argue that good cause to remove the entry of default exists because they: (1) timely sought relief from entry of default; (2) have not acted willfully

or with any culpable intent; and (3) have meritorious defenses. Defendants further argue that Plaintiff will not be prejudiced by an order setting aside default, and that the Rule 16 scheduling dates had not been set when default entered or when the Motion to Set Aside Default was filed.   Defendants submit that the public policy favoring adjudication of cases on the merits strongly counsels in favor of setting aside default, as does the language of Rule 55(c).

The record is clear that Defendants failed to answer the Complaint within the sixty days allowed by waiving service of summons.  *See* Fed. R. Civ. P. 4(d)(3).  As set forth above, requests for waivers of service of summons were sent to most Defendants on October 10 or 19, 2007, and service was accepted by DPS officials on or near those dates.  Defendants therefore had **sixty days from those dates** to file an Answer, but did not do so until February 8, 2008.[7]  *See id.*

---

[7] Defendants state that "service had not yet been completed[,]" by December 6, 2007, when Mr. Cregor entered his special appearance.  (Defs.' Mem. in Support of Mot. to Set Aside Default at 3.)  As noted above, however, service was accepted on behalf of most Defendants by the DPS's designated representative, Thomas Read, or his staff, **in early October 2007**.  Defendants go on to say that, "the last of the waivers of service was [sic] filed with the clerk's office on January 3, 2008," suggesting that Defendants had sixty days from that date within which to file an Answer. (*Id.*) A plain reading of the federal rules belies this interpretation of the computation of service dates.  The date that the waiver of service is filed with the court is immaterial to the date that an answer is required to be filed.

Mr. Cregor also states that he was under the impression

Rule 4(d)(3) requires that any defendant within the United States who waives service of the summons, must file an Answer within "60 days after the date on which the request for waiver of service was sent[.]" *See also* Fed. R. Civ. P. 12(a)(1)(B) (same).  In this case, that would mean that Defendants' Answer was required to be filed on or before December 9 or 18, 2007.  When Mr. Cregor entered his special appearance, most Defendants had already been served, regardless of whether the Office of the Attorney General had determined whether they would represent them or not.  If Defendants were not represented by the Attorney General's Office, but had agreed to waive service, they would nevertheless be required to answer the

---

"that no default would be entered based upon his filed appearance [on December 6, 2007]." (*Id.* at 4.)  The court is not aware of any agreement between the court or the parties, whereby Defendants were granted additional time to file an Answer to the Complaint.  Moreover, even if the sixty-day time period was tolled until December 6, 2007, **Defendants still would have been required to file an answer on or before February 6, 2008.**  The Answer was not filed until February 8, 2008, after Defendants received electronic notification that default was entered.

The court has worked diligently with the DPS and the U.S. Marshals Service to create a system that simplifies the manner in which DPS employee defendants receive service of process in *in forma pauperis* cases.  Despite this, Mr. Cregor implies that sixty days is insufficient in most cases for state employees represented by the Attorney General's Office to file an answer a complaint.  If this is the case, Defendants had two options. First, they could have sought an extension of time to file an answer.  They did not.  Second, Defendants could request that the court revisit the service arrangement set up between the U.S. Marshals Service, the court, the Department of Public Safety, and the Office of the Attorney General, to address these concerns. Again, they did not.

Complaint within sixty days of the date that the request was sent.  Mr. Cregor does not adequately explain why Defendants represented by the Attorney General's Office are entitled to more time.  Further, the fact that the last waivers of service and receipts were not filed until January 8, 2008, has no bearing on when the requests for waivers were *sent*, which is the operative date for determining when an answer is due.

Nonetheless, "[w]here timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.3d 941, 945-46 (9th Cir. 1986) (internal quotations and brackets omitted).  Defendants were quick to seek an order setting aside default, and a review of their Answer gives some support for their sparse argument concerning their meritorious defenses to Plaintiff's claims.  In *Mendoza*, the court held that a court's discretion is especially broad where, as here, entry of default is being set aside, rather than a default judgment.  *Mendoza*, 783 F.3d at 945.

Defendants' also argue that Plaintiff will not be prejudiced if the entry of default is set aside and that no deadlines or due dates have passed.  While the court agrees, it notes that a Rule 16 scheduling order is never set in prisoner civil rights cases in this court prior to the Answer being filed,

so this argument is somewhat disingenuous.   Nonetheless, as no deadlines set pursuant to a Rule 16 Scheduling Order have passed, Plaintiff's present position is no different than it would be had Defendants filed a timely Answer to his Complaint.   Plaintiff will not suffer prejudice if the court sets aside entry of default.   The entries of default here should, therefore, be set aside so that the case can be decided on its merits.

As Defendants have shown good cause why the court should set aside the entries of default, the court **FINDS AND RECOMMENDS** that Defendants' Motion be **GRANTED**.[8]   As the court finds that default should be set aside, this court **DENIES** Plaintiff's Motion for Default Judgment AS MOOT.

**C.   Plaintiff's Allegations of Inadequate Photocopy Services**

On December 11, 2007, this court denied Plaintiff's motion for free photocopies.   (Doc. No. 62, Order Denying Plaintiff Free Photocopies ("December 11 Order.")   The court found that, insofar as Plaintiff submitted legible, timely requests for photocopies to prison officials, Plaintiff had access to adequate photocopying services at the prison.   (*See*

---

[8] The entry of default against Defendant Todd Frias, who has still failed to answer or otherwise defend in this action, and who is not represented by the Attorney General's Office at this time, remains in effect.   The court will not address Plaintiff's Motion for Default Judgment as it may relate to Defendant Frias, because the Motion was not specific to him, nor is it clear how Plaintiff's claims for injunctive relief can be entered against a defendant who is no longer an employee of the Department of Public Safety.

*id.*)  The court noted that, at times, Plaintiff's requests for copies took up to ten days to be accommodated, but found that this time frame had not negatively impacted any of Plaintiff's filings.  Plaintiff was informed that he could also handcopy his documents, or, if he preferred, he could request copies from the court at a cost of $.50 per page.  (*Id.* at 5.)

On December 26, 2007, Plaintiff filed an authorization to allow photocopying fees to be deducted from his prison trust account, when funds become available, to cover the costs for photocopies made by the court.  (Doc. No. 70.)  The court thereafter entered an Order ("December 27 Order") allowing Plaintiff to request photocopies of his documents to be paid in installment payments when funds are available.  (Doc. No. 72.) Since that time, Plaintiff has requested numerous copies of his documents, to be made by court personnel.  (*See e.g.*, Doc. Nos. 80, 82,85, 87, 98, 100, and 107.)  These voluminous and confusing requests have placed a great burden on court personnel, who must decipher Plaintiff's requests, copy and collate them, return them to Plaintiff, account for the deferred fees, and notify the DPS the running tally of photocopying costs that Plaintiff must pay to the court when and if funds become available in Plaintiff's prison trust account.

Defendants now inform the court again that Plaintiff has easy access to several methods of photocopying his documents

at his prison.  First, Plaintiff may type his documents on one of the prisons six IBM Wheel Writer typewriters, which have a memory facility and can print unlimited copies of any document that has been typed on the typewriter.

Plaintiff may also pay, when funds become available, $.05 per page to have his documents photocopied by prison personnel.  Plaintiff may request copies in person while he is attending the law library, and copies will be made within three days of the oral request.  Plaintiff can also request copies in writing, as noted in the December 11 Order, and these requests may take up to ten days to be processed, from request to receipt. Plaintiff may also, of course, handcopy his documents.

Plaintiff admitted at the status conference that he has, in fact, been requesting and receiving copies from the prison law librarian since his return to Maui Community Correctional Center.

The court finds, again, that these options for photocopying are perfectly adequate, and afford Plaintiff the ability to photocopy his documents sufficiently to prosecute his actions.  The ease and sufficiency of these methods for Plaintiff to obtain photocopies far outweighs the administrative burden placed on the court by Plaintiff's constant requests for photocopies of his documents.  As such, the court **VACATES** its December 27 Order allowing Plaintiff to receive photocopies from

21

the court.

Defendants are **DIRECTED** to provide Plaintiff with photocopies of court pleadings and documents needed for submission to the court and in support of such pleadings, in compliance with and in the manner designated by the Department of Public Safety's Policies and Procedures Manual.  Plaintiff, too, must comply with the rules regarding requests for copies, and is **DIRECTED** to provide clear, legible, organized, easily-understandable requests for copies.

Plaintiff is **NOTIFIED** that, in consideration of his pro se indigent status, he need not submit an original document and two copies to the court, as set forth in LR7.7.  Plaintiff need only submit **one original document** to the court for filing; the court will make copies to distribute to the magistrate and district judge.  The court will also return a copy to Plaintiff of the **first page** of any document that Plaintiff files, with its file-stamped date, free of charge.

Finally, the court notes that Plaintiff seems to believe that he is required to mail documents to the court and to Defendants by "'Certified/Return-Reciept' Mailing" [sic].  (*See* Pl. Dec. ¶ 6.)  Plaintiff is mistaken.  Ordinary, first class United States mail service is sufficient for mailing Plaintiff's pleadings to the court and to Defendants.

### III. <u>CONCLUSION</u>

22

1.    The court **FINDS and RECOMMENDS** that Plaintiff's Motion for Reconsideration, Doc. No. 84, titled "Motion in Limine," be **DENIED**;

2.    The court **FINDS and RECOMMENDS** Defendants' Motion to Set Aside Default, Doc. No. 96, be **GRANTED**;

3.    The court **DENIES** Plaintiff's Motions for Entry of Default Judgment, Doc. Nos. 89 & 106;

4.    The court **VACATES** its December 27 Order, Doc. No. 72, allowing Plaintiff to receive photocopies from court personnel and **ORDERS** the Maui Community Correctional Center to provide timely, adequate copies to Plaintiff, **when Plaintiff makes clear, concise, reasonable, legible** requests for such copies;

5.    The Clerk is **DIRECTED** to send a copy of this Findings and Recommendation and Order to Plaintiff, Defendants Attorney, and DPS Representative Thomas Read, at 900 Ala Moana Blvd., Ste. 400, Honolulu, Hawaii 96814.

IT IS SO FOUND AND RECOMMENDED AND ORDERED.

Dated: Honolulu, Hawaii, February 29, 2008



_____
Kevin S.C. Chang
United States Magistrate Judge

*Campos v. Lingle, et al.*, Civ. No. 07-454 HG-LEK; FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO SET ASIDE DEFAULT; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR RECONSIDERATION; AND ORDER DENYING PLAINTIFF'S

MOTIONS FOR DEFAULT JUDGMENT; dmp\ F&Rs 08\Campos 07-454 KSC (dny entry dflt j & mot. recon.)